**United States District Court**
For the Northern District of California

1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

ALFONSO HELENA and DANIEL TZIU,                 No. C04-0260 CW

10          Plaintiffs,                         ORDER DENYING
                                                DEFENDANT
11      v.                                      SALAZAR'S MOTION
                                                FOR A NEW TRIAL,
12  CITY OF SAN FRANCISCO, COUNTY OF SAN        GRANTING
    FRANCISCO, JOSEPH SALAZAR and DOES 1-       DEFENDANT CHING'S
13  25,                                         MOTION FOR
                                                JUDGMENT AS A
14          Defendants.                         MATTER OF LAW AND
                                                DENYING PLAINTIFF
15  _____/   TZIU'S MOTION TO
                                                AMEND JUDGMENT
16

17

18

19          Defendant Officer Joseph Salazar moves pursuant to Federal

20  Rule of Civil Procedure 59 for a new trial.  Defendant Sergeant

21  Kyle Ching moves pursuant to Federal Rule of Civil Procedure 50(b)

22  for judgment as a matter of law on the basis of qualified immunity.

23  Plaintiffs Alfonso Helena and Daniel Tziu, respectively, oppose the

24  motions.  Mr. Tziu also moves pursuant to Federal Rule of Civil

25  Procedure 60(a) to correct or amend the judgment by awarding

26  nominal damages.  Sergeant Ching opposes this motion.

27          The matters were heard on March 3, 2006.  Having considered

28  all of the papers filed by the parties and oral argument on the

motion, the Court denies Officer Salazar's motion for a new trial, grants Sergeant Ching's motion for judgment as a matter of law and denies as moot Mr. Tziu's motion to amend the judgment.

BACKGROUND

Plaintiffs' lawsuit arises out of a March 7, 2003, incident in which they were arrested or detained by Officer Salazar and Sergeant Ching of the San Francisco Police Department.  At trial, Mr. Helena brought claims under 42 U.S.C. § 1983 against Officer Salazar for excessive force, false arrest and unreasonable search; Mr. Tziu brought § 1983 claims against Sergeant Ching for excessive force and false arrest.  The jury heard these matters during the week of December 12 through 16, 2005.

The evidence at trial showed that at midnight on the night of the incident, Plaintiffs were together at Jose Coronado Park, where some of their friends had been playing soccer.  The officers testified that they considered the park to be a dangerous, high-crime area.  Mr. Tziu was a seventeen-year old minor.

Mr. Helena admitted to drinking three small shots of cognac while at home earlier in the evening.  Mr. Helena and Mr. Tziu testified that they had only been at the park for a short time when police arrived, but their friends Angelos Turcios and Adolfo Siliezar testified that Plaintiffs had been at the park for one and a half to two hours.

Officer Salazar testified that he initially drove past the park and observed Plaintiffs.  On the police report, he wrote that he saw Mr. Helena drinking, urinating in a bush and retching.  At trial, Officer Salazar admitted that he did not actually see urine

United States District Court

For the Northern District of California

or vomit, but that he thought that was what was happening based on Mr. Helena's position.

Officer Salazar testified that he got out of the car and saw Mr. Helena fall into a bush; Mr. Helena was staggering and smelled of alcohol.  He arrested Mr. Helena for public intoxication.

Mr. Helena testified that despite the three cognacs earlier in the evening, he was sober when he encountered the police.  He denied urinating, vomiting or falling into a bush.  Mr. Helena testified that Officer Salazar assaulted him for several minutes at the scene of the arrest, including slamming Mr. Helena's head into cars, punching him and choking him until he fell down.  He testified that, when he was taken to the Mission Police Station, Officer Salazar hit him again while interrogating him about guns.

Sergeant Ching and Officer Greiner, who were also at the scene, corroborated Officer Salazar's testimony that Mr. Helena was drunk and that no assault occurred.  Officer Peter Shields, Officer Raymond Lee and Officer Angel Lozano, all of whom saw Mr. Helena after his arrest, testified that he seemed drunk and that they saw no signs of injury.

Mr. Tziu corroborated Mr. Helena's testimony that he was sober.  Mr. Tziu testified that he wasn't able to see Mr. Helena the whole time,[1] but that he did see Officer Salazar slam Mr. Helena's head into a car and punch him several times.

Mr. Turcios also testified that he did not see the entire

_____

[1] Mr. Tziu also testified that he was assaulted by Sergeant Ching; the jury found against Mr. Tziu on his excessive force claim, and that finding is not challenged here.

3

United States District Court

For the Northern District of California

incident.  He did not see Mr. Helena fall into a bush, urinate or vomit.  Mr. Turcios testified that Mr. Helena was drunk, based on his past observations of Mr. Helena in that condition and the fact that Mr. Helena was angry, excited and raised his voice to the officers.  Mr. Turcios said that he saw Officer Salazar hold Mr. Helena's head against the car, and that he heard Mr. Helena complain that Officer Salazar was hurting his fingers.

Mr. Siliezar testified that he did not see Mr. Helena drinking, but that he was at the park to play soccer, not to see who was drinking.  Mr. Siliezar came over to watch the arrest, but by that time, Mr. Tziu and Mr. Helena were already handcuffed.  Mr. Siliezar saw no assault.

Linda Felix, Mr. Helena's godmother, testified that she saw him the morning after the incident and observed redness around his neck, swollen fingers and red and swollen wrists.  She observed no redness or bruising on his face.

Dr. Steven Fugaro, Defendants' expert medical witness, reviewed the records from Mr. Helena's examination at San Francisco General Hospital the day after the incident.  Dr. Fugaro testified that the only objective signs of injury detected during the examination were two abrasions, one on the right side of Mr. Helena's face and one on his neck, and abrasions on his wrists.  He also noted that Mr. Helena had reported feeling tenderness and pain.  Dr. Fugaro testified that the wrist abrasions were consistent with being handcuffed and the neck and face abrasions were consistent with falling into a bush, although he acknowledged that other scenarios could have caused the injuries.  Dr. Fugaro

4

testified that there was no evidence of the blunt force trauma that
he would expect on someone who had been slammed into a car or
punched, and no evidence of the bruising expected in an individual
who had been strangled.  He acknowledged that many factors could
affect the type of injury and how the injury manifested itself, for
example, the amount of force used.

Plaintiffs sought to call witnesses who alleged that Officer
Salazar used excessive force against them or their families in the
past, as well as current or former SFPD members with information
relating to past incidents involving Officer Salazar, and to
introduce written complaints and disciplinary records.  Defendants
filed a motion in limine to exclude such evidence.  The Court
granted the motion with respect to most of the evidence Plaintiffs
intended to bring, but admitted evidence related to two particular
incidents, a complaint of excessive force by witness Michael Avila,
which was sustained by San Francisco's Office of Citizen
Complaints, and official records related to Officer Salazar's
filing of a false or inaccurate police report.  Mr. Avila testified
at trial, and admitted to smoking marijuana prior to his testimony
as well as on the day of his encounter with Officer Salazar.

The Court instructed the jury that the evidence of Officer
Salazar's prior use of excessive force and submission of a false
police report could be considered "only for the purpose of showing,
to the extent the evidence does show, intent, motive, bias or lack
of mistake."  The Court additionally cautioned the jury,

> This evidence may not be used to show that the police officers
> acted in any particular way on the date of the incident in
> question.  And, further, you should understand that any such

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1      evidence is not used to show any character trait of the police
2      officers, or any tendency of the police officer to engage in
       misconduct.

3  Final Jury Instructions at 5.

4      Neither party requested, and the Court did not give, an

5  instruction on nominal damages.

6      The Court instructed the jury on the issue of punitive

7  damages, and the first verdict form given to the jury asked them to

8  decide whether or not Officer Salazar should pay punitive damages

9  to Mr. Helena.  Final Jury Instructions at 17; Verdict Form at 3.

10 Pursuant to the parties' stipulation bifurcating the trial,

11 however, the jury was told, "Any damages award you make at this

12 time may not include any amount for punitive damages.  The amount

13 of punitive damages, if any, will be decided at another time."

14 Final Jury Instructions at 17.

15     When Plaintiffs' counsel referred in his closing argument to

16 Mr. Avila's complaint against Officer Salazar and suggested that

17 this was "not the first time" the officer had used excessive force,

18 Defendants objected.  The Court sustained the objection.

19 Plaintiffs' counsel also conceded to the jury that it might find

20 that the force actually used was not as great as Mr. Helena's

21 subjective perception of it.

22     The jury found that Officer Salazar used excessive force

23 against, and falsely arrested, Mr. Helena, and that Sergeant Ching

24 falsely arrested Mr. Tziu.  However, the jury found that Officer

25 Salazar did not conduct an unreasonable search of Mr. Helena's car,

26 and that Sergeant Ching did not use excessive force against Mr.

27 Tziu.  The jury awarded Mr. Helena compensatory damages in the

28

amount of $5,000, and awarded Mr. Tziu no compensatory damages.
The jury found that Mr. Helena was entitled to punitive damages
from Officer Salazar in connection with the excessive force and
false arrest.  The jury then received Officer Salazar's financial
statement, and awarded Mr. Helena $5,000 in punitive damages.

LEGAL STANDARD

I.  Judgment as a Matter of Law

    A motion for judgment as a matter of law after the verdict
renews the moving party's prior Rule 50(a) motion for judgment as a
matter of law at the close of all the evidence.  Fed. R. Civ. P.
50(b).  The post-trial motion may be raised only as to the same
claims and upon the same grounds as the prior motion.  <u>Murphy v.
City of Long Beach</u>, 914 F.2d 183, 186 (9th Cir. 1990); <u>Collins v.
City of San Diego</u>, 841 F.2d 337, 342 (9th Cir. 1988).

    Judgment as a matter of law after the verdict may be granted
only when the evidence and its inferences, construed in the light
most favorable to the non-moving party, permits only one reasonable
conclusion as to the verdict.  Where there is sufficient
conflicting evidence, or if reasonable minds could differ over the
verdict, judgment as a matter of law after the verdict is improper.
<u>See, e.g.</u>, <u>Kern v. Levolor Lorentzen, Inc.</u>, 899 F.2d 772, 775 (9th
Cir. 1990); <u>Air-Sea Forwarders, Inc. v. Air Asia Co.</u>, 880 F.2d 176,
181 (9th Cir. 1989); <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1252 (9th
Cir. 1985); <u>L.A. Mem'l Coliseum Comm'n v. NFL</u>, 726 F.2d 1381, 1387
(9th Cir. 1984).

II.  New Trial

    Under Rule 59, "the trial court may grant a new trial, . . .

7

United States District Court

For the Northern District of California

if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." <u>Hanson v. Shell Oil Co.</u>, 541 F.2d 1352, 1359 (9th Cir. 1976) (internal citations omitted).  There is no easily articulated formula for passing on such motions.  Probably the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Landes Constr. Co., Inc. v. Royal Bank of Canada</u>, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

The Ninth Circuit has found that the existence of substantial evidence supporting the verdict does not prevent the court from granting a new trial if the verdict is nonetheless against the clear weight of the evidence. <u>Landes</u>, 833 F.2d at 1371.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." <u>Id.</u>  Therefore, the standard for evaluating the evidence is less stringent than that governing Defendants' Rule 50(b) renewed motion for judgment as a matter of law.

DISCUSSION

I.  New Trial

A.  Evidence of Excessive Force and False Arrest

Officer Salazar claims that he is entitled to a new trial because the jury's findings that he used excessive force against

8

and falsely arrested Mr. Helena were contrary to the weight of the evidence.

Defendants argue that the evidence overwhelmingly showed that there was no assault.  This case was essentially a credibility contest between Plaintiffs and the officers, who proffered very different versions of the events at issue.  All of the parties delivered competent, believable testimony, yet the jury could reasonably have questioned the credibility of any or all of the major witnesses.  The jury could have concluded, consistently with the weight of the evidence, that the police officers were not telling the truth about their treatment of Mr. Helena and credited Plaintiffs' testimony that force was used without justification, but nevertheless found that Mr. Helena's subjective memory of the amount of force used by Officer Salazar was exaggerated.  Such a finding would have been consistent with Mr. Turcio and Mr. Siliezar's testimony that they did not see an assault of the type described by Mr. Helena, but that they were not watching the entire time.  A finding of a lesser, but still excessive, use of force would also have been consistent with Ms. Felix's testimony, the medical evidence, including the facial abrasions and red marks on Mr. Helena's neck, and the testimony of Dr. Fugaro, who acknowledged that the abrasions were consistent with scenarios other than the one described by Officer Salazar.

Defendants argue that, even if the jury credited Mr. Turcio's testimony that Officer Salazar hurt Mr. Helena's fingers, this force would not be excessive, as a matter of law.  The Ninth Circuit has found, in certain contexts, that forcible handcuffing

1   or painful wrist and finger holds may be used against non-violent,

2   non-cooperative subjects.  See Arpin v. Santa Clara Valley Transp.

3   Agency, 261 F.3d 912, 921-22 (9th Cir. 2001) (finding reasonable

4   use of force in handcuffing arrestee who stiffened her arm in

5   resistence); Eberle v. City of Anaheim, 901 F.2d 814, 819-20 (9th

6   Cir. 1990) (finding use of index-finger control hold on spectator

7   reasonable as a matter of law where officers faced with "explosive

8   and potentially dangerous situation"); Forrester v. City of San

9   Diego, 25 F.3d 804, 807-8 (9th Cir. 1994) (upholding use of pain

10  compliance techniques on resisting, non-violent anti-abortion

11  protestors despite injury to arms and hands).  Here, however, close

12  factual questions preclude the Court from ruling that Officer

13  Salazar's use of a pain compliance hold on Mr. Helena's fingers

14  would have been reasonable as a matter of law.  Unlike the

15  situation in Arpin, there is evidence that Mr. Helena did not

16  resist arrest, i.e. Mr. Helena's own testimony.  The overall

17  situation faced by the officers here was neither explosive nor

18  dangerous, cf. Eberle, 901 F.2d at 820; in fact, the extent of Mr.

19  Helena's inebriation was subject to dispute.  Furthermore, even if

20  the jury did credit only Mr. Turcios' testimony regarding force,

21  that testimony does not show that Officer Salazar was using a pain

22  compliance hold that applied force only in proportion to Mr.

23  Helena's resistence.  Cf. Forrester, 25 F.3d at 807.  Moreover, as

24  described above, Mr. Turcios' testimony was not the only evidence

25  supporting the jury's finding of excessive force.

26      Defendants also maintain that the verdict of false arrest in

27  favor of Mr. Helena was contrary to the clear weight of the

28
                                    10

United States District Court

For the Northern District of California

evidence.   In order for probable cause to exist, Mr. Helena would have to have been found intoxicated and in such a condition that he was "unable to exercise care" for his "own safety and the safety of others."   Cal. Penal Code § 647(f).   Again, this was a question of fact, the resolution of which depended largely on the jury's credibility determinations.   The only additional relevant testimony was that of Mr. Turcios, who testified, based on his own past experience with Mr. Helena and the fact that Mr. Helena was talking back to Officer Salazar, that Mr. Helena was drunk.[2]   This testimony fell far short of showing that Mr. Helena was unable to exercise care for his own safety.   The fact that all of the officers present testified that Mr. Helena fell into a bush, while Plaintiffs testified that he did not, does not mean that the clear weight of the evidence favored Defendants; instead, the weight of the evidence depended on whose story was believed.   The reliability of Officer Salazar's testimony was compromised by its discrepancies with his official police report.

    In sum, upon review of the jury's findings and all of the evidence presented at trial, the Court finds that the jury was justified in crediting Plaintiffs' testimony, even if Mr. Helena overstated the severity of force used, and thus the verdict was not contrary to the weight of the evidence.

    B.   Admission of Prior Incident Evidence

    Officer Salazar claims that he is entitled to a new trial due

---

    [2]Plaintiffs suggest that Mr. Turcios' evaluation of Mr. Helena's condition was unreliable because he comes "from a culture where one doesn't challenge authority," Helena's Opp. at 7; however, there is no evidence to support this assertion.

to the Court's alleged error in admitting evidence relating to the

prior Avila incident involving use of excessive force and to the

prior filing of a false police report.

The Ninth Circuit has articulated a four-part test governing

the admission of prior bad acts:

> (1) There must be sufficient evidence to support a finding by
> the jury that the defendant committed the similar bad act.
> (2) The prior act must not be too remote in time from the
> commission of the present wrong.  (3) The prior conduct must,
> in some cases, be similar to the offense charged.  (4) The
> prior conduct must be introduced in order to prove an element
> of the charged offense that is a material issue in the case.

Trahan v. City of Oakland, 960 F.2d 152, **1 (9th Cir. 1992)

(citing United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.

1989)) (internal citations, quotations and ellipses omitted).

> 1.   Prior Use of Excessive Force

Defendants now reassert their arguments that the Avila

incident was not sufficiently similar or relevant to an element of

the charged violation of § 1983 to be admissible.

Defendants claim that the Avila incident was dissimilar

because there, the Chief of Police found only that Officer Salazar

punched Avila in the face, while here, Mr. Helena alleged a more

sustained assault, including choking and slamming his head into a

car.  The fact that the incidents were not identical does not

change the fact that both involved allegations of excessive force

used against a suspect who talked back to Officer Salazar.  The

Avila incident is sufficiently similar to Mr. Helena's claim of

excessive force.

Defendants further claim that because intent to deprive Mr.

Helena of his constitutional rights was not a required element of

his § 1983 claim, the Avila evidence is not relevant to any element of the claim.

At trial, the parties disputed the factual question of whether Officer Salazar used force against Mr. Helena, and if so how much. Therefore, whether Officer Salazar had the specific intent to use force against Mr. Helena is relevant and probative, even though intent to deprive him of his constitutional rights was not.  Cf. Tanberg v. Sholts, 401 F.3d 1151, 1168 (10th Cir. 2005) (affirming district court's exclusion of police officer's prior acts where officer's intent to use force not disputed); Clark v. Martinez, 295 F.3d 809, 813 (8th Cir. 2002) (affirming district court's exclusion of testimony regarding prior bad act where officer's intent to strike plaintiff not in dispute).  The Avila evidence was more probative than prejudicial.

Furthermore, even though a malicious intent to cause harm is not relevant to Plaintiffs' § 1983 claims, such an intent is relevant to Officer Salazar's liability for punitive damages, another issue that the jury decided in the first phase of the trial.  Thus, the Court did not err in allowing evidence relevant to intent, including the Avila incident.

2.   Prior Filing of False Police Report

Defendants assert that the evidence regarding Officer Salazar's past filing of an inaccurate police report should have been excluded because it was too remote in time, and too dissimilar to Plaintiffs' allegations.

As Plaintiffs note, evidence of the filing of the false report was admitted for the purpose of impeaching Officer Salazar's

13

United States District Court

For the Northern District of California

1  credibility pursuant to Federal Rule of Evidence 608(b), and thus

2  must simply pass the Rule 403 bar against admission of evidence

3  that is more prejudicial than probative.  The incident occurred in

4  1999, just four years prior to the events of the trial.  Although

5  Officer Salazar described the inaccuracies in his report as

6  inadvertent, the evidence showed that he altered some facts in a

7  way that minimized his own responsibility, although the official

8  investigation was not concluded in time for discipline to be

9  imposed.  If the jury chose not to believe his testimony that the

10  inaccuracies were unintentional, then the evidence would be

11  probative enough of Officer Salazar's credibility to outweigh any

12  risk of undue prejudice.

13       C.   Compromise Verdict

14       Officer Salazar claims that he is entitled to a new trial

15  because the $5,000 compensatory damages award was simply a

16  "compromise verdict" intended to send a message that Officer

17  Salazar was a "bad cop."

18       A "compromise verdict is one reached when the jury, unable to

19  agree on liability, compromises that disagreement and enters a low

20  award of damages . . . .  [S]uspicion should be aroused if the jury

21  awards only nominal damages."  Romberg v. Nichols, 970 F.2d 512,

22  521 (9th Cir. 1992), vacated on other grounds, 506 U.S. 1075

23  (1993), (quoting Nat'l R.R. Passenger Corp. v. Koch Indus., 701

24  F.2d 108, 110 (10th Cir. 1983)).  In determining whether a jury

25  reached a compromise verdict, courts look to the "totality of

26  circumstances," and consider "any indicia of compromise apparent

27  from the record and any other factors that may have caused a

28                                    14

verdict for damages that would be inadequate if the jury actually found liability."   Yarbrough v. Sturm, Ruger & Co., 964 F.2d 376, 379 (5th Cir. 1992).   These include "a close question of liability, a damages award that is grossly inadequate, and other circumstances such as length of jury deliberation."   Shugart v. Central Rural Elec. Co-op., 110 F.3d 1501, 1505-06 (quoting Nat'l R.R. Passenger, 701 F.2d at 110).

Contrary to Defendants' assertions, there is little in the record to indicate that the jury was unable to agree on liability and thus compromised by entering a low award of damages.   Although the liability issue was close, for the reasons described above, the jury's verdict is not contrary to the weight of the evidence. Furthermore, the damage award, although low, was not grossly inadequate.   The jury awarded more than nominal damages to Mr. Helena, and the $5,000 compensatory award to him was reasonable, especially in light of the evidence, discussed above, that his injuries were not particularly severe.   Moreover, the speed with which the jury delivered the verdict indicates that the jury decided the liability issues easily, without compromise. Therefore, the Court denies Officer Salazar's motion for a new trial based on an alleged compromise verdict.

D.   Jury Misconduct

Lastly, Officer Salazar claims that he is entitled to a new trial due to jury misconduct, as shown by the declaration of juror Karen Lavsa.

When a jury verdict contravenes a court's instructions, "an appellate court will reverse for legal error."   Thomas v. Stalter,

15

United States District Court

For the Northern District of California

20 F.3d 298, 303 (7th Cir. 1994) (quoting <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1021 (7th Cir. 1992)) (affirming district court's award of new trial where jury verdict inherently inconsistent and contrary to the weight of the evidence); <u>see also</u> <u>Vidrine v. Kansas City S. Ry. Co.</u>, 466 F.2d 1217 (5th Cir. 1972) (reversing district court's decision to deny motion for new trial where uniform pattern of awards showed jury failed to obey instructions to make each award on individual merits).

Here, however, there is nothing in the verdict itself that indicates that juror misconduct occurred.  Defendants' only evidence of juror misconduct is the Lavsa Declaration, which is inadmissible.

Rule 606(b) of the Federal Rules of Evidence prohibits a juror from testifying about the jury's deliberations or how the jurors reached their conclusions unless "extraneous prejudicial information was improperly brought to the jury's attention."  Fed. R. Evid. 606(b).  Where affidavits or juror testimony are offered to impeach a verdict, the district court must examine this material to determine if it is the type of juror testimony permitted by Federal Rule of Evidence 606(b).  <u>Hard v. Burlington Northern R.R. Co.</u>, 870 F.2d 1454, 1461 (9th Cir. 1989).  Rule 606(b) permits juror testimony only on the questions of "'whether extraneous prejudicial information was improperly brought to the jury's attention'" and "'whether any outside influence was improperly brought to bear on any juror.'"  <u>Id.</u>  Looking at only permissible evidence, the district court must decide whether an evidentiary hearing is needed to determine whether a new trial is necessary.

16

United States District Court

For the Northern District of California

Id.  Unless the affidavits on their face support the conclusion, by a preponderance of the evidence, that but for this evidence the outcome of the trial would have been different, no evidentiary hearing is necessary.   Id.

Ms. Lavsa declares that the jury decided during the first phase of deliberations, prior to receiving Officer Salazar's financial statement, that $5,000 would be an appropriate punitive damages award.  Defendants describe this determination during the first phase of deliberations as an "extraneous influence" that affected the second phase of jury deliberations, and thus argue that it is a permissible subject of juror testimony.  Defendants' characterization is unsupported by any case law and is inconsistent with the "long-recognized and very substantial concerns support[ing] the protection of jury deliberations from intrusive inquiry." Tanner v. United States, 483 U.S. 107, 127 (1987). Moreover, even if Ms. Lavsa's declaration were admissible, it does not show that any misconduct in fact occurred, much less misconduct that would warrant retrying the case.  The jury instructions did not forbid the jury from discussing in its initial deliberations the size of a possible punitive damages award, and, notwithstanding her subjective misgivings about other jurors' understanding of Officer Salazar's financial statement, Ms. Lavsa states that the jury reached its final determination "after reviewing his financial statement."  Lavsa Decl. ¶ 4 (emphasis added).  Accordingly, the Court denies Officer Salazar's motion for a new trial on the basis of juror misconduct.

17

II.   Qualified Immunity

Sergeant Ching moves for judgment as a matter of law on the basis of qualified immunity.

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If so, the plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct.  Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).  In determining whether qualified immunity exists, the particular contours of the constitutional right at stake "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 643 (1987)).

If the law is determined to be clearly established, the next inquiry is whether a reasonable official could have believed his or her conduct was lawful.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).  The defendant bears the burden of establishing that his or her actions were reasonable, Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995), and the defendant's good faith or subjective belief in the legality of

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

his or her actions is irrelevant.  Alford v. Haner, 333 F.3d 972, 978-79 (9th Cir. 2003).  Where there are genuine issues of fact relating to what the officer knew or did, or if a reasonable juror could find that the officer acted unreasonably, the question is appropriately for the trier of fact.  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099-1100 (9th Cir. 1995).  Once the jury has resolved necessary underlying factual disputes, whether a defendant is entitled to qualified immunity is a question of law for the court to decide.  Act Up!/Portland, 988 F.2d at 873.

The jury found that Sergeant Ching's conduct violated Mr. Tziu's Fourth Amendment rights.  However, Plaintiffs have not met their burden to show that clearly established law guarantees minors a right to be free from detention in circumstances such as these. Plaintiffs identify clearly established law that an individual's constitutional rights are violated if he or she is detained without probable cause for the purpose of custodial interrogation, even if the individual is not arrested.  Dunaway v. New York, 442 U.S. 200, 216 (1979).  However, Plaintiffs have not shown that the holding in Dunaway, a case which did not involve detention of a minor, clearly applies to Sergeant Ching's conduct, which did not involve detention for interrogation.

Furthermore, even assuming that Sergeant Ching did violate rights of Mr. Tziu that were clearly established, Defendants show that police officers are faced with competing legal obligations, and Sergeant Ching could have reasonably, if mistakenly, believed that these obligations applied.  In Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), the Ninth Circuit held that a police officer had

19

**United States District Court**

For the Northern District of California

an affirmative duty to protect a person where the officer arrested and impounded her companion's car, and then left her stranded in a high-crime neighborhood.  An officer may be liable under this "state-created danger" theory if a plaintiff shows (1) that the officer's actions created or increased the danger facing him or her; and (2) that the State official acted with deliberate indifference to a known or obvious danger.  <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1062 (9th Cir. 2006).

In accordance with <u>Wood</u>, the jury was instructed that a police officer has a legal duty to afford some measure of safety if his own conduct affirmatively places an individual in a position of danger.  In finding in favor of Mr. Tziu, the jury necessarily found that Sergeant Ching had no legal duty to detain him.  The jury may have found that the arrest of Mr. Helena did not affirmatively place Mr. Tziu in danger; the jury could have, for instance, credited Plaintiffs' testimony that they did not consider it dangerous to be in Jose Coronado Park late at night.

In addressing the issue of qualified immunity, however, the Court looks at the question of whether a reasonable official could have believed that his conduct was lawful.  Officials are granted immunity "even if a reasonable mistake as to the legality of their actions occurs."  <u>Haynie v. County of Los Angeles</u>, 339 F.3d 1071, 1077-78 (9th Cir. 2003) (citing <u>Saucier</u>).

Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Sergeant Ching could have reasonably believed that leaving Mr. Tziu at the park would affirmatively place him in danger.  It is undisputed that the officers believed

**United States District Court**

For the Northern District of California

that Jose Coronado Park was a dangerous place for an individual to be left alone at night.  All the parties agree that the police were not aware that Mr. Tziu lived nearby.  A reasonable officer could have believed, based on the fact that Plaintiffs were together with only one car, that Mr. Tziu was dependent on Mr. Helena for transportation.  Thus, a reasonable officer could have believed that arresting Mr. Helena and locking up his car would leave Mr. Tziu stranded and endanger him.  It was in this context that Sergeant Ching ordered that Mr. Tziu be taken to the police station to be picked up by his mother.

The parties disputed at trial whether Sergeant Ching was aware that Mr. Tziu was a minor.  Sergeant Ching testified that he knew Mr. Tziu was under eighteen.  On the other hand, Plaintiffs point to evidence from which they say a jury could have drawn an inference that Sergeant Ching did not know that Mr. Tziu was a minor, including Mr. Tziu's testimony that he told no one his age; Officer Greiner's testimony that he did not discover Mr. Tziu's age until asking Mr. Helena at the police station; and that fact that, at the station, the police failed to follow protocol for treatment of minors in protective custody.  Nevertheless, Sergeant Ching's belief was reasonable, and, in fact, accurate, even if it was based on incomplete or mistaken information.

The Court does not, and need not, decide whether Sergeant Ching was in fact obliged under the law to ensure Mr. Tziu's safety, and what steps Sergeant Ching should have taken to do so. Although Plaintiffs persuasively distinguish <u>Wood</u> on the facts, a reasonable officer could nevertheless have concluded that

handcuffing Mr. Tziu and taking him into temporary protective custody was necessary in order to protect him, in accordance with the State-created danger doctrine.

For these reasons, the Court grants Sergeant Ching's motion for judgment as a matter of law based on qualified immunity. Because Sergeant Ching is immune from suit, Mr. Tziu's motion to amend the judgment to award nominal damages is moot.

CONCLUSION

For the foregoing reasons, Officer Salazar's motion for a new trial is DENIED (Docket No. 92) and Sergeant Ching's motion for judgment as a matter of law is GRANTED (Docket No. 93). Mr. Tziu's motion to amend or correct the judgment is DENIED as moot (Docket No. 85).

The Clerk shall enter an amended judgment accordingly.


IT IS SO ORDERED.

Dated: 5/1/06

_Claudia Wilken_

_____
CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

22